**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

United States Courts
Southern District of Texas
FILED

JUL – 5 2017

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO.** |
| | § | **H 17-394** |
| **JOSE ORLANDO CAMACHO** | § | **UNDER SEAL** |
| | § | |

**INFORMATION**

THE UNITED STATES CHARGES:

**Introduction**

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order.

At all times material to this Information:

1.     Petroleos de Venezuela S.A. (together with its subsidiaries and affiliates, "PDVSA") was the Venezuelan state-owned and state-controlled oil company.  PDVSA was responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government.  PDVSA and its wholly-owned subsidiaries, including BARIVEN S.A. ("BARIVEN") were "instrumentalities" of the Venezuelan government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A).

2.     At all relevant times, Defendant **JOSE ORLANDO CAMACHO** ("Defendant **CAMACHO**"), a naturalized United States Citizen and resident of Texas, was employed by PDVSA or by wholly-owned subsidiaries or affiliates

thereof from in or around 2004 until in or around November 2013.  During that time, Defendant **CAMACHO** held a number of positions related to procurement, including serving as a sourcing supervisor and manager for planning and strategic sourcing for the PDVSA procurement subsidiary in Houston, Texas responsible for overseeing the shipping of goods to Venezuela for PDVSA's operations. Defendant **CAMACHO** 's job responsibilities included selecting companies for bidding panels, which allowed those companies to submit bids on individual PDVSA projects.  Defendant **CAMACHO** was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

3.     At all relevant times, a businessman ("BUSINESSMAN A") was an owner and executive of an international logistics and freight-forwarding company ("COMPANY A"), based in the Southern District of Texas and incorporated under the laws of the State of Texas, that supplied equipment and services to PDVSA, and was a U.S. Lawful Permanent Resident and a resident of the State of Texas, and thus was a "domestic concern" and an officer, director, employee, agent, and shareholder of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1). On behalf of COMPANY A, BUSINESSMAN A worked on a number of PDVSA contracts and contract bids for logistics and freight-forwarding.

## COUNT ONE
### (18 U.S.C. § 371 – Conspiracy)

4.      Beginning in or around 2009 and continuing through at least 2013, the

defendant,

### JOSE ORLANDO CAMACHO,

did willfully, that is, with the intent to further the objects of the conspiracy, and

knowingly conspire, confederate, and agree with others known and unknown to the

United States, including BUSINESSMAN A, to commit an offense against the

United States, that is:

knowing that the property involved in the financial transaction represented

the proceeds of some form of unlawful activity, to conduct or attempt to conduct

financial transactions affecting interstate and foreign commerce, which financial

transactions involved the proceeds of specified unlawful activity, namely, bribery

of a foreign official, a felony violation of the FCPA, Title 15, United States Code,

Sections 78dd-2 and 78dd-3, knowing that the transactions were designed in whole

and in part to conceal and disguise the nature, the location, the source, the

ownership, and the control of the proceeds of said specified unlawful activity, in

violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

### Purpose of the Conspiracy

5.      The purpose of the conspiracy was for Defendant **CAMACHO**,

BUSINESSMAN A, and their co-conspirators to engage in financial transactions to

3

conceal and disguise bribe payments paid to Defendant **CAMACHO**, all in an effort by BUSINESSMAN A and his cohorts and others to secretly and illegally gain an improper advantage in obtaining and retaining lucrative contracts with PDVSA.

## Manner and Means of the Conspiracy

6.     The manner and means by which Defendant **CAMACHO** and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following, while in the Southern District of Texas and elsewhere:

7.     Defendant **CAMACHO**, together with others, including BUSINESSMAN A, agreed that, in exchange for Defendant **CAMACHO**'s assistance in providing COMPANY A with confidential bidding information, recommendations for the award of business, and assistance in processing lucrative modifications of contractual terms for PDVSA contracts, BUSINESSMAN A, COMPANY A, and others would pay bribes to Defendant **CAMACHO**.

8.     Defendant **CAMACHO**, together with others, including BUSINESSMAN A and COMPANY A, attempted to conceal, and did in fact conceal, the nature, source, and ownership of the bribes by sometimes having the bribes paid in cash in U.S. dollars through a relative of Defendant **CAMACHO**.

9.     Defendant **CAMACHO**, together with others, including BUSINESSMAN A and COMPANY A, attempted to conceal, and did in fact

4

conceal, the nature, source, and ownership of the bribes by sometimes having the bribes paid in wire transfers from COMPANY A's Houston bank accounts to overseas bank accounts held in the names of Defendant **CAMACHO**'s relatives but controlled by Defendant **CAMACHO**, which payments were covered for accounting purposes by false invoices orchestrated by BUSINESSMAN A and COMPANY A for fictitious services.  From that overseas bank account, Defendant **CAMACHO** would then direct the funds for his personal use.

### Overt Acts

10.    In furtherance of the conspiracy and to achieve the objects thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

11.    On or about January 10, 2013, BUSINESSMAN A caused $16,000 in cash to be drawn from a bank account held in the name of COMPANY A and based in the Southern District of Texas, to be delivered to Defendant **CAMACHO**.

12.    On or about March 18, 2013, BUSINESSMAN A caused $9,000 in cash to be drawn from a bank account held in the name of COMPANY A and based in the Southern District of Texas, to be delivered to Defendant **CAMACHO**.

13.     On or about March 19, 2013, BUSINESSMAN A caused $9,000 in cash to be drawn from a bank account held in the name of COMPANY A and based in the Southern District of Texas, to be delivered to Defendant **CAMACHO.**

14.     On or about March 20, 2013, BUSINESSMAN A caused $9,000 in cash to be drawn from a bank account held in the name of COMPANY A and based in the Southern District of Texas, to be delivered to Defendant **CAMACHO.**

15.     On or about March 21, 2013, BUSINESSMAN A caused $5,000 in cash to be drawn from a bank account held in the name of COMPANY A and based in the Southern District of Texas, to be delivered to Defendant **CAMACHO.**

16.     On or about September 27, 2013, BUSINESSMAN A caused $63,860 to be transferred from a bank account held in the name of COMPANY A and based in the Southern District of Texas into an overseas bank account held in the name of Defendant **CAMACHO**'s relative, accounted for by an invoice for fictitious legal/consulting services.

17.     On or about October 18, 2013, BUSINESSMAN A caused a separate amount of $63,860 to be transferred from a bank account held in the name of COMPANY A and based in the Southern District of Texas into an overseas bank account held in the name of Defendant **CAMACHO**'s relative, accounted for by an invoice for fictitious legal/consulting services.

All in violation of Title 18, United States Code, Section 371.

6

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(1))

18.     Pursuant to Title 18, United States Code, Section 982(a)(1), the United States gives notice to **JOSE ORLANDO CAMACHO** that in the event of his conviction of the offense charged in Count 1 of the Information, the United States intends to seek forfeiture of all property, real or personal, involved in money laundering offenses or traceable to such property.

### Money Judgment

19.     Defendant is notified that upon conviction, a money judgment may be imposed equal to the total value of all property subject to forfeiture.

### Substitute Assets

20.     Defendant is notified that in the event that property subject to forfeiture, as a result of any act or omission of Defendant or his co-conspirators,

   a.  Cannot be located upon the exercise of due diligence;

   b.  Has been transferred or sold to, or deposited with, a third person;

   c.  Has been placed beyond the jurisdiction of the Court;

   d.  Has been substantially diminished in value; or

   e.  Has been commingled with other property which cannot be subdivided without difficulty;

the United States will seek to forfeit any other property of Defendant up to the total value of the property subject to forfeiture pursuant to Title 21, United States Code, Section 853(p), as incorporated by reference in Title 18, United States Code, Section 982(b)(1).

ABE MARTINEZ
ACTING UNITED STATES
ATTORNEY

SANDRA MOSER
ACTING CHIEF, FRAUD
SECTION, CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

BY:

JOHN P. PEARSON
DEPUTY CHIEF
ROBERT S. JOHNSON
ASSISTANT UNITED STATES
ATTORNEY

BY:

AISLING O'SHEA
BRUCE H. SEARBY
TRIAL ATTORNEYS

8